LEE, P.J.,
Concurring in Part, Dissenting in Part:
¶ 32. With respect for the majority, I must dissent as to Issue II: whether the MTC acted within its discretion in terminating the MOU. I agree with the majority’s opinion as to Issues I and III. However, keeping in mind that a rebuttable presumption exists in favor of the decision rendered by an agency and the burden of proving to the contrary is on the challenging party, I would find that we must defer to the MTC’s decision that it was necessary to rescind the MOU as long as it had a reason for its decision that was not arbitrary or capricious. His Way Homes, Inc. v. Miss. Gaming Comm’n, 733 So.2d 764, 766(¶ 9) (Miss.1999). I would affirm the ’ decision of the MTC because there was no evidence that the reasons given for termination of the MOU were arbitrary or contrary to law.
¶ 33. The MTC gave several reasons for the termination of the MOU. The MTC commissioners stated at their meeting that they were under pressure from several political officials to take back control of the project from the City to expedite the completion of the interchange. At the MTC meeting, Andy Hughes, a representative of the FHWA, stated that questions were raised about the appropriateness of the selection of EAI. The record is not completely clear as to why federal funding was not obtained, but the MTC cites improprieties in the selection process as one of the reasons the contract was not timely submitted to the FHWA. Basically, the testimony stated that because of controversy in the selection process, the agreement was never approved by the MDOT, which is required before federal funding is obtained.
¶ 34. As to why the contract could not be completed with EAI as the engineering firm for the project, the City’s chief engineer stated, “As I understand it, Federal Highway takes the position that- once the process is tainted, you’ve got to go through it completely again. Anything that touches it from that point forward is disqualified from accessing federal aid money.” When asked further why the project could not be completed under the current MOU, the MTC’s chief engineer stated, “I’ve been told that it’s proceeded without that approval, all of it will be either at our expense or the City of Meridian’s expense. There will not be any access to federal aid funds.” MDOT Executive Director Larry “Butch” Brown went on to state:
I have discussed that [the selection process and federal funding], as you know— I’m sure you know by now — with the mayor. He is on record in the-minutes of his meeting, as well as the videotapes, as supporting the prospect of completing the environmental document with MDOT making a full reimbursement for that, and then moving on to MDOT making the selection. The city council has also (inaudible) [agreed] with that and went on record as saying that in their city council meeting.
Brown stated that the mayor “convinced the council to continue on with the environmental document” and that the mayor said “a dozen times, or more, very openly in his meeting that as soon as they had an environmental document that MDOT would then proceed to make a selection for the *14 design.” The mayor also told Brown that “all he wants to do is to expedite this process.”
¶ 35. Giving discretion to the MTC’s decision, I cannot find that its decision to rescind the MOU was arbitrary or capricious. Further, the MOU allowed the MTC to terminate the MOU with written notice. The termination provision in the MOU states:
This agreement shall be subject to termination at any time upon ninety (90) days written notice by either party. Such notice shall not, however, be effective as to contracts made in reliance upon this agreement and underway at the time of termination. Any contract underway shall be allowed to conclude under its own terms. After the contract for construction has been awarded, this agreement shall not be terminated save for default by the CITY in carrying the project to completion.
Despite the provision above that states that “[ajriy contract underway shall be allowed to conclude under its own terms,” the City had the option through the terms of its own contract to order EAI to stop working. The contract entered into between the City and EAI states, “The City of Meridian, may, by written order to the Contractor/Consultant at any time, and without notice to any surety, require the Contractor/Consultant to stop all or any part of the work called for by this Contract.” The City ordered EAI to stop work on the project.- EAI was paid by the City for the work , that it had completed, and the City was reimbursed by the MTC.
¶ 36. Since the MTC’s decision to terminate the MOU was based on a lack of federal funding and the need to expedite the project, I would find that the trial court erred in reinstating the MOU. Accordingly, I would reverse and render for a judgment reinstating the decision of the MTC to terminate the contract. In addition, as mentioned in footnote number one of the majority’s opinion, EAI’s grievance could have been brought as a breach-of-contract claim, in which case we would not be addressing the issue of deference to an administrative agency.
KING, C.J., JOINS THIS OPINION. IRVING, J., JOINS THIS OPINION IN PART.